Joel E. Elkins (SBN 256020)
jelkins@weisslawllp.com
**WEISSLAW LLP**
9107 Wilshire Blvd., Suite 450
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile:  310/209-2348

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DUSHYANTH SURAKANTI, | Case No._____ |
| Plaintiff, | |
| v. | **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| DERMIRA, INC., THOMAS G. WIGGANS, EUGENE A. BAUER, DAVID E. COHEN, FRED CRAVES, MATTHEW FUST, HALLEY E. GILBERT, MARK MCDADE, JAKE NUNN, WILLIAM RINGO and KATHLEEN SEBELIUS, | JURY TRIAL DEMANDED |
| Defendants. | |

Plaintiff Dushyanth Surakanti ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

- 1 -
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

1. Plaintiff brings this action against Dermira, Inc. ("Dermira" or the "Company") and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(e) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(e), 78t(a), and to enjoin the expiration of a tender offer (the "Tender Offer") on a proposed transaction, pursuant to which Dermira will be acquired by Eli Lilly and Company ("Lilly"), through Lilly's wholly-owned subsidiary Bald Eagle Acquisition Corporation ("Purchaser") (the "Proposed Transaction").

2. On January 10, 2020, Dermira and Lilly issued a joint press release announcing that they had entered into an Agreement and Plan of Merger (the "Merger Agreement") dated January 10, 2020 to sell Dermira to Lilly. Under the terms of the Merger Agreement, Lilly will acquire all outstanding shares of Dermira for $18.75 in cash per share of Dermira common stock (the "Offer Price"). Pursuant to the Merger Agreement, Purchaser commenced the Tender Offer on January 22, 2020. The Tender Offer is scheduled to expire at one minute after 11:59 p.m., Eastern Time, on February 19, 2020. The Proposed Transaction is valued at approximately $1.1 billion.

3. On January 22, 2020, Dermira filed a Solicitation/Recommendation Statement on Schedule 14D-9 (the "Recommendation Statement") with the SEC. The Recommendation Statement, which recommends that Dermira stockholders tender their shares in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) Dermira management's financial projections, relied upon by the Company's financial advisors, Citigroup Global Markets Inc. ("Citi") and SVB Leerink LLC ("SVB Leerink"), in their financial analyses; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by Citi and SVB Leerink; and (iii) Citi's potential conflicts of interest. Defendants authorized the issuance of the false and misleading Recommendation Statement in violation of Sections 14(e) and 20(a) of the Exchange Act.

4. In short, the Proposed Transaction will unlawfully divest Dermira's public stockholders of the Company's valuable assets without fully disclosing all material information concerning the Proposed Transaction to Company stockholders. To remedy defendants' Exchange Act violations, Plaintiff seeks to enjoin the expiration of the Tender Offer unless and until such problems are remedied.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(e) and 20(a) of the Exchange Act pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists. Dermira is incorporated in Delaware and is headquartered in this District. Moreover, each of the Individual Defendants, as Company officers or directors, either resides in this District or has extensive contacts within this District.

## PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Dermira.

9. Defendant Dermira is a Delaware corporation with its principal executive offices located at 275 Middlefield Road, Suite 150, Menlo Park, CA 94025. Dermira is a biopharmaceutical

company dedicated to bringing biotech ingenuity to medical dermatology by delivering differentiated, new therapies to the millions of patients living with chronic skin conditions. The Company's approved treatment, QBREXZA® (glycopyrronium) cloth ("QBREXZA"), is indicated for pediatric and adult patients (ages 9 and older) with primary axillary hyperhidrosis (excessive underarm sweating). Dermira is currently evaluating lebrikizumab in a Phase 3 clinical development program for the treatment of moderate-to-severe atopic dermatitis (a form of eczema) and also has early-stage research and development programs in other areas of dermatology. Dermira's common stock is traded on the NASDAQ Global Select Market under the ticker symbol "DERM."

10. Defendant Thomas G. Wiggans ("Wiggans") is a co-founder of Dermira, its Chief Executive Officer, Chairman of the Board and has been a director of the Company since 2010.

11. Defendant Eugene A. Bauer ("Bauer") is a co-founder of Dermira, its Chief Medical Officer and has been a director of the Company since 2010.

12. Defendant David E. Cohen ("Cohen") has been a director of the Company since 2014.

13. Defendant Fred Craves ("Craves") has been a director of the Company since 2010.

14. Defendant Matthew Fust ("Fust") has been a director of the Company since 2014.

15. Defendant Halley E. Gilbert ("Gilbert") has been a director of the Company since 2019.

16. Defendant Mark McDade ("McDade") has been a director of the Company since 2014.

17. Defendant Jake Nunn ("Nunn") has been a director of the Company since 2011.

18. Defendant William Ringo ("Ringo") has been a director of the Company since 2014.

19. Defendant Kathleen Sebelius ("Sebelius") has been a director of the Company since 2015.

20. Defendants identified in paragraphs 10 to 19 are collectively referred to herein as the "Board" or the "Individual Defendants."

- 4 -
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

## OTHER RELEVANT ENTITIES

21. Lilly is an Indiana corporation and a global healthcare leader that unites caring with discovery to create medicines that make life better for people around the world. Lilly's common stock is traded on the New York Stock Exchange under the ticker symbol "LLY."

22. Purchaser is a Delaware corporation and wholly owned subsidiary of Lilly.

## SUBSTANTIVE ALLEGATIONS

**Company Background**

23. Dermira is a biopharmaceutical company dedicated to bringing biotech ingenuity to medical dermatology by delivering differentiated, new therapies to the millions of patients living with chronic skin conditions. Dermira's approved treatment, QBREXZA, is indicated for pediatric and adult patients (ages nine and older) with primary axillary hyperhidrosis (excessive underarm sweating). Dermira is also evaluating lebrikizumab in a Phase 2b clinical trial for the treatment of moderate-to-severe atopic dermatitis (a severe form of eczema) and have early-stage research and development programs in other areas of dermatology.

24. Dermira's portfolio consists of:

- QBREXZA, a topical, once-daily anticholinergic cloth that was approved by the U.S. Food and Drug Administration ("FDA") in June 2018 for the treatment of primary axillary hyperhidrosis in adult and pediatric patients nine years of age and older. Primary axillary hyperhidrosis is a medical condition with no known cause that results in underarm sweating beyond what is needed for normal body temperature regulation. Anticholinergics are a class of pharmaceutical products that exert their effect by blocking the action of acetylcholine, a neurotransmitter that transmits signals within the nervous system that are responsible for the activation of sweat glands. QBREXZA is applied directly to the skin and is designed to block underarm sweat production by inhibiting sweat gland activation. Dermira began shipping QBREXZA to wholesalers and a preferred dispensing partner in September 2018, and QBREXZA became commercially available in pharmacies nationwide on October 1, 2018;

- Lebrikizumab, a novel, injectable, humanized monoclonal antibody targeting interleukin 13 ("IL-13") that Dermira is developing for the treatment of moderate-to-severe atopic dermatitis. IL-13 is a naturally occurring cytokine that is thought

to play an important role in promoting allergic inflammation and mediating its effects on bodily tissues, including in patients with atopic dermatitis. Lebrikizumab is designed to bind to IL-13 with high affinity, specifically preventing formation of the IL-13 receptor/interleukin 4 ("IL-4") receptor complex and subsequent signaling. In August 2017, Dermira entered into a license agreement (the "Roche Agreement") with F. Hoffmann-La Roche Ltd and Genentech, Inc. (together, "Roche") pursuant to which Dermira obtained exclusive, worldwide rights to develop and commercialize lebrikizumab for atopic dermatitis and all other therapeutic indications. Based on the results of two exploratory Phase 2 clinical trials conducted by Roche in atopic dermatitis patients, Dermira initiated a Phase 2b clinical trial in January 2018 to evaluate the safety and efficacy of lebrikizumab as a monotherapy compared with placebo and to establish the dosing regimen for a potential Phase 3 program in patients with moderate-to-severe atopic dermatitis. Dermira completed enrollment of 280 patients ages 18 years and older in the Phase 2b clinical trial in October 2018 and announced topline results in the second half of March 2019; and

- Early-stage research and development programs in other areas of dermatology.

25. On November 5, 2019, the Company announced its third quarter 2019 financial results and key highlights, reporting revenue for the third quarter totaling $11.5 million, comprised of $10.2 million in QBREXZA net product sales and $1.3 million in collaboration and license revenue associated with the Company's partnership agreement with Almirall S.A., compared with $0.7 million, comprised exclusively of QBREXZA net product sales, in the comparable quarter in 2018. Key operation highlights for the quarter, included:

- Announcing the initiation of the Phase 3 program evaluating lebrikizumab in patients with moderate-to-severe atopic dermatitis. The Phase 3 program includes two identical monotherapy studies expected to enroll a total of approximately 800 adult and adolescent patients ages 12 and older with moderate-to-severe atopic dermatitis at approximately 200 sites in the U.S., Europe and Asia.

- Reporting detailed primary results from the Phase 2b study of lebrikizumab in adult patients with moderate-to-severe atopic dermatitis at the 39th Annual Fall Clinical Dermatology Conference. The results demonstrated that lebrikizumab produced rapid, robust, dose-dependent efficacy across endpoints spanning the range of atopic dermatitis signs and symptoms, including skin lesions and pruritus, when administered once every two or four weeks, in the context of a safety profile consistent with the substantial prior experience with this and other biologics targeting IL-13 signaling.

- Generating 32,646 prescriptions for QBREXZA as reported by Symphony PHAST monthly data for the third quarter of 2019, an increase of over 14 percent compared to the second quarter of 2019.

- Growing physician adoption to more than 15,200 unique prescribers writing for QBREXZA during the first 12 months of the launch.

- Facilitating growth in the hyperhidrosis market, with all dermatologist-written prescriptions for topical hyperhidrosis therapies up 53 percent in the 12 months ended September 2019 compared to the 12 months ended September 2018.

26. On December 10, 2019, Dermira announced that the FDA granted Fast Track designation for lebrikizumab, its novel, investigational treatment being evaluated for patients with moderate-to-severe atopic dermatitis. Fast Track is a designation granted by the FDA intended to facilitate the drug development process and expedite the review of therapies to treat serious conditions and fill an unmet medical need, including by demonstrating an advantage over currently available therapy. The goal of the Fast Track process is to ensure important new treatments reach patients as quickly as possible. Lebrikizumab is currently being evaluated in two Phase 3 studies, ADvocate 1 and ADvocate 2, to confirm its safety and efficacy in adolescent and adult patients, ages 12 years and older, with moderate-to-severe atopic dermatitis. Defendant Wiggans commented on the FDA's granting Fast Track designation, stating:

> We are pleased that the FDA granted lebrikizumab its Fast Track designation and recognizes the unmet need for patients living with moderate-to severe atopic dermatitis and the potential for lebrikizumab to offer a treatment for this serious condition. This Fast Track designation puts us one step closer to potentially delivering a new therapeutic option more quickly to patients should the results from earlier Phase 2 studies be confirmed in the ongoing Phase 3 studies assessing the safety, efficacy and tolerability of the investigational therapy.

**The Proposed Transaction**

27. On January 10, 2020, Dermira and Lilly issued a joint press release announcing the Proposed Transaction. The press release stated, in relevant part:

> INDIANAPOLIS, IN and MENLO PARK, CA – Eli Lilly and Company (NYSE: LLY) and Dermira, Inc. (NASDAQ: DERM) today announced a definitive agreement

- 7 -
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

for Lilly to acquire Dermira for $18.75 per share, or approximately $1.1 billion, in an all-cash transaction. Dermira is a biopharmaceutical company dedicated to developing new therapies for chronic skin conditions.

The acquisition will expand Lilly's immunology pipeline with the addition of lebrikizumab, a novel, investigational, monoclonal antibody designed to bind IL-13 with high affinity that is being evaluated in a Phase 3 clinical development program for the treatment of moderate-to-severe atopic dermatitis in adolescent and adult patients, ages 12 years and older. Lebrikizumab was granted Fast Track designation from the U.S. Food and Drug Administration (FDA) in December 2019. The acquisition of Dermira will also expand Lilly's portfolio of marketed dermatology medicines with the addition of QBREXZA® (glycopyrronium) cloth, a medicated cloth approved by the FDA for the topical treatment of primary axillary hyperhidrosis (uncontrolled excessive underarm sweating).

"People suffering from moderate-to-severe atopic dermatitis have significant unmet treatment needs, and we are excited about the potential that lebrikizumab has to help these patients," said Patrik Jonsson, Lilly senior vice president and president of Lilly Bio-Medicines "The acquisition of Dermira is consistent with Lilly's strategy to augment our own internal research by acquiring clinical phase assets in our core therapeutic areas and leveraging our development expertise and commercial infrastructure to bring new medicines to patients. This acquisition provides an opportunity to add a promising Phase 3 immunology compound for atopic dermatitis, while also adding an approved dermatology treatment for primary axillary hyperhidrosis. We look forward to completing the acquisition and continuing Dermira's excellent work."

"Since Dermira's inception, we have been focused on applying strong science to medical dermatology with the goal of finding new ways to treat some of the most common skin conditions that affect millions of people every year," said Tom Wiggans, chairman and chief executive officer at Dermira. "We are pleased that Lilly has recognized the progress we have made and the opportunities for lebrikizumab and QBREXZA. We share with Lilly a common interest in helping patients through the development of innovative treatments and believe that patients and physicians will benefit from the resources that Lilly can bring to maximize the potential of our programs. We also believe this proposed transaction is in the best interests of Dermira and our stockholders and affirms the dedication and important groundwork established by Dermira's talented employees since the founding of the company nearly 10 years ago."

Under the terms of the agreement, Lilly will commence a tender offer to acquire all outstanding shares of Dermira, Inc. for a purchase price of $18.75 per share in cash, or approximately $1.1 billion. The transaction is not subject to any financing condition and is expected to close by the end of the first quarter of 2020, subject to customary closing conditions, including receipt of required regulatory approvals and the tender of a majority of the outstanding shares of Dermira's common stock. Following the successful closing of the tender offer, Lilly will acquire any shares of Dermira that are

not tendered into the tender offer through a second-step merger at the tender offer price.

The purchase price represents a premium of approximately 86 percent to the 60-day volume-weighted average trading price of Dermira's stock ending on January 9, 2020, the last trading day before the announcement of the transaction. Dermira's Board of Directors unanimously recommends that Dermira's stockholders tender their shares in the tender offer. Additionally, certain Dermira stockholders, beneficially owning approximately 13 percent of Dermira's outstanding common stock, have agreed to tender their shares in the tender offer.

This transaction will be reflected in Lilly's financial results and financial guidance according to Generally Accepted Accounting Principles (GAAP). Lilly will provide an update to its 2020 financial guidance, including the expected impact from the acquisition of Dermira, as part of its fourth-quarter and full-year 2019 financial results announcement on January 30, 2020.

For Lilly, SVB Leerink is acting as the exclusive financial advisor and Weil, Gotshal & Manges LLP is acting as legal advisor in this transaction. For Dermira, Citi is acting as lead financial advisor, SVB Leerink is acting as financial advisor, and Fenwick & West LLP is acting as legal advisor.

**The Recommendation Statement Contains Material Misstatements or Omissions**

28.     The defendants filed a materially incomplete and misleading Recommendation Statement with the SEC and disseminated it to Dermira's stockholders. The Recommendation Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to tender their shares in the Proposed Transaction or seek appraisal.

29.     Specifically, as set forth below, the Recommendation Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) Dermira management's financial projections, relied upon by the Company's financial advisors Citi and SVB Leerink in their financial analyses; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by Citi and SVB Leerink; and (iii) Citi's potential conflicts of interest.

*Material Omissions Concerning Dermira's Financial Projections*

30. The Recommendation Statement omits material information regarding the Company's financial projections provided by Dermira's management and relied upon by Citi and SVB Leerink for its financial analyses.

31. For example, with respect to the Company's financial projections, the Recommendation Statement sets forth:

> [I]n connection with its strategic planning process and its evaluation of the Transactions, Dermira's management prepared certain non-public unaudited financial analyses and forecasts as a standalone company ("Projections"), which (1) assume that Dermira self-funds the continued development, regulatory approval, manufacturing, sales and marketing of lebrikizumab in the United States (and finances this with the proceeds of multiple equity financings, raising in aggregate $1.125 billion over the period of the Projections), rather than entering into a global collaboration or additional regional transactions for lebrikizumab; (2) assume that Dermira's current debt is not repaid and is refinanced in like amounts; (3) assume the receipt of milestone and royalty payments from Almirall; (4) assume milestone and royalty payments to Roche in respect of sales of lebrikizumab and to Rose U LLC ("Rose U") or its assignees in respect of sales of QBREXZA; (5) do not include any revenue from sales of any products or indications other than lebrikizumab for atopic dermatitis and QBREXZA for primary axillary hyperhidrosis, or any material development, regulatory, manufacturing or sales or marketing costs associated with any such products or product development programs, including any resulting from Dermira's other research and development programs; (6) ***are risk-adjusted to reflect Dermira's management's estimate of the probability of success of lebrikizumab***; and (7) reflect a reallocation of significant planned expenses previously anticipated to be directed to sales and marketing of QBREXZA to instead support the development of lebrikizumab, and the effect of such reallocation on sales of QBREXZA.

Proxy Statement at 41 (emphasis added). The Recommendation Statement fails, however, to disclose management's estimate of the probability of success of lebrikizumab.

32. Additionally, the Recommendation Statement fails to disclose the un-risked projections so Dermira stockholders can evaluate the financial impact the Company's risk-adjustments had on the projections.

33. The omission of this information renders the statements in the "Certain Unaudited Financial Information of Dermira" section of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning Citi's and SVB Leerink's Financial Analyses*

34. The Recommendation Statement describes Citi's and SVB Leerink's fairness opinions and the various valuation analyses performed in support of their opinions. However, the description of Citi's and SVB Leerink's fairness opinions and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Dermira's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Citi's and SVB Leerink's fairness opinions in determining whether to tender their shares in the Proposed Transaction or seek appraisal.

35. With respect to Citi's *Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose: (i) quantification of the inputs and assumptions underlying the discount rate range of 11.3% to 14.1%; (ii) the basis for using a range of perpetuity growth rates of 30.0% to negative 20.00%; and (iii) the fully diluted shares outstanding of Dermira (using the treasury method) as of January 9, 2020.

36. With respect to SVB Leerink's *Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose: (i) quantification of the inputs and assumptions underlying the discount rate range of 11.0% to 13.0%; (ii) the basis for using a range of perpetuity growth rates of negative 30.00% to negative 20.00%; and (iii) the fully diluted shares outstanding of Dermira (using the treasury method) as of January 9, 2020.

37. The omission of this information renders the statements in the "Opinions of Dermira's Financial Advisors" section of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning Citi's Potential Conflicts of Interest*

38. The Recommendation Statement fails to disclose material information concerning the potential conflicts of interest faced by Citi.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

39.     For example, the Recommendation Statement sets forth:

> As the Board was also aware, Citi and its affiliates in the past have provided, and currently provide, a variety of liability management, underwriting, cash management, foreign exchange and trading services to Lilly and its affiliates unrelated to the Transactions, for which services Citi and its affiliates have received and expect to receive compensation, including, without limitation, during the two-year period prior to the date of its opinion, having acted as (1) lead dealer manager on liability management of Lilly's $2.0 billion tender offer to purchase certain series of its outstanding notes in October 2019; (2) joint bookrunner on Lilly's €1.6 billion notes issuance in October 2019; and (3) joint bookrunner on Elanco Animal Health, Inc.'s ("*Elanco*") $2.0 billion senior notes offering in August 2018. Citi and its affiliates received during such two-year period aggregate fees of approximately $6.1 million from Lilly and its affiliates for the services noted above *and additional fees for other investment banking services unrelated to the Transactions*. Citi also provides in the ordinary course of its business lending services to Lilly and its affiliates, including, without limitation having acted as a lender under Lilly's senior credit facility, with approximately $450.0 million of committed capital. Citi has also provided investment banking and lending services to Elanco, including acting as joint bookrunner on Elanco's $1.74 billion initial public offering in September 2018, and acting as lender under Elanco's senior credit facility, with approximately $142.0 million of committed capital. Citi also provides in the ordinary course of its business non-investment banking services to Lilly and its affiliates, such as foreign exchange, cash management and other treasury and trade solutions services. In connection with the Transactions, Lilly or its affiliates may draw down funds from an existing credit facility in which Citi or one of its affiliates acts as a lender, for which such entity would receive compensation.

*Id.* at 39 (emphasis added). The Recommendation Statement fails, however, to disclose the "additional fees for other investment banking services unrelated to the Transactions" that Citi expects to receive from Elanco, as well as the expected compensation Citi expects to receive for the services it is currently providing to Lilly and its affiliates.

40.     Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

41.     The omission of this information renders the statements in the "Opinion of Dermira's Financial Advisors" sections of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

42. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Recommendation Statement. Absent disclosure of the foregoing material information prior to the expiration of the Tender Offer, Plaintiff and the other Dermira stockholders will be unable to make an informed decision whether to tender their shares in the Proposed Transaction or seek appraisal and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

### Claims Against All Defendants for Violations of Section 14(e) of the Exchange Act

43. Plaintiff repeats all previous allegations as if set forth in full.

44. Defendants violated Section 14(e) of the Exchange Act by issuing the Recommendation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading, or engaged in deceptive or manipulative acts or practices, in connection with the Offer commenced in conjunction with the Proposed Transaction.

45. Defendants knew that Plaintiff would rely upon their statements in the Recommendation Statement in determining whether to tender his shares pursuant to the Offer commenced in conjunction with the Proposed Transaction.

46. As a direct and proximate result of these defendants' unlawful course of conduct in violation of Section 14(e) of the Exchange Act, absent injunctive relief from the Court, Plaintiff has sustained and will continue to sustain irreparable injury by being denied the opportunity to make an informed decision in deciding whether or not to tender his shares.

## COUNT II

**Claims Against the Individual Defendants for
Violation of Section 20(a) of the Exchange Act**

47. Plaintiff repeats all previous allegations as if set forth in full.

48. The Individual Defendants acted as controlling persons of Dermira within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers or directors of Dermira and participation in or awareness of the Company's operations or intimate knowledge of the false statements contained in the Recommendation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

49. Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement and other statements alleged by Plaintiff to be misleading prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

50. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Recommendation Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of this document.

51. In addition, as the Recommendation Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Recommendation Statement purports to describe the various issues and

information that they reviewed and considered — descriptions which had input from the Individual Defendants.

52. By virtue of the foregoing, the Individual Defendants have violated section 20(a) of the Exchange Act.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Dermira, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

D. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: January 27, 2020

**WEISSLAW LLP**

By: */s/ Joel E. Elkins*

Joel E. Elkins
9107 Wilshire Blvd., Suite 450
Beverly Hills, CA 90210
Telephone:  310/208-2800
Facsimile:   310/209-2348
      -and-
Richard A. Acocelli
1500 Broadway, 16th Floor
New York, NY  10036
Telephone: 212/682-3025
Facsimile:  212/682-3010

*Attorneys for Plaintiff*

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS